UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY LEE SMITH,
*et al.*,

      Plaintiffs,

v.

HEIDI WASHINGTON,
*et al.*,

      Defendants.

_____/

Case No. 1:17-cv-285

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

   This is a *pro se* civil rights action brought by prisoners in the custody of the Michigan Department of Corrections (MDOC) for relief under 42 U.S.C § 1983 and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 42 U.S.C. § 2000cc-1(a) ("RLUIPA"). This matter is now before the Court on a motion for summary judgment filed by defendants Washington and Farber based on failure to exhaust administrative remedies (ECF No. 28).

### I.  Background

   This case arose from an incident involving *pro se* plaintiff Flakes on March 24, 2017. The original complaint, dated March 24, 2017, was signed by eight *pro se* plaintiffs on March 27, 2017, and filed on March 30, 2017. Compl. (ECF No. 1). On May 10, 2017, the Court granted *in forma pauperis* status to five plaintiffs (Smith, Turner, Flakes, Sardin and Madlock, *see* Order (ECF No. 15)), and dismissed three plaintiffs (Cromer, Jackson, and Perry, *see* Orders (ECF Nos. 16 and 17)).

On July 25, 2017, the Court ordered the remaining plaintiffs to file an amended complaint in proper form.  *See* Order (ECF No. 19).  Plaintiff Smith filed an amended complaint on July 31, 2017, stating that the incident at issue occurred on March 24, 2017, when defendant Farber "confiscated . . . and later returned" *pro se* plaintiff Flakes' "Universal Crown."  Amend. Compl. at PageID.100.  Plaintiff Smith signed the amended complaint "On Behalf of NGE Members."  *Id.* at PageID.103.  On August 29, 2017, the Court ordered plaintiffs "to submit the amended complaint signed by each Plaintiff that wishes to continue with the action."  Order (ECF No. 21).  Plaintiffs Flakes, Turner, Sardin, and Madlock returned signatures to the amended complaint on September 13, 2017.  *See* Signature Page (ECF No. 22).

The Court ordered service of the amended complaint on two defendants, MDOC Director Heidi Washington and unknown Farber, summarizing plaintiffs' claims as follows:

> Plaintiffs allege that Defendant Washington is responsible for maintaining and enforcing a policy concerning the religious headwear worn by members of the Nations of Gods and Earths (NGE) that both intentionally discriminates against members of NGE relative to other religions and violates their rights under the First and Fourth Amendments and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 42 U.S.C. § 2000cc-1(a).  They argue that their Universal Crowns are nearly identical to and no more dangerous than yarmulkes, yet NGE members are only allowed to wear their Universal Crowns while in their cells, while Jewish prisoners are permitted to wear their yarmulkes at all times. In addition, Plaintiffs complain that they are not allowed to possess the NGE newspaper, *The Five-Percent*, or to attend group religious services. Plaintiffs contend that the regulations to which they are subject are discriminatory and place a substantial burden on the exercise of their religious rights.

> Plaintiffs specifically allege that, on March 24, 2017, Defendant Farber confiscated Plaintiff Flakes' universal crown while Plaintiffs were on yard duty, though Farber later returned the crown.

> Plaintiffs seek injunctive relief.

Opinion (ECF No. 23, PageID.147).  See also Order (ECF No. 24).

Plaintiffs' amended complaint seeks the following injunctive relief: that members of the NGE (also referred to as "Five Percenters") be allowed to wear their Universal Crowns "and given the same rights as Jewish prisoner [sic] in respects [sic] to Jewish prisoner's [sic] wearing Yakmules [sic] on visits, during meals, yard, ect. [sic]", that the Court order defendants to "[r]emove the Five-Percenter Newspaper off the Restricted Publication List", and that the Court "[o]rder the Defendant's [sic] to provide a photo copy of the 'Universal Crown' and 'Yakmule' [sic] that this court may see the 'Universal Crown' pose [sic] no threat to security." Amend. Compl. (ECF No. 20, PageID.103).  While plaintiffs include an alternative request for a "Trial By Jury", this request is a nullity.  As the Court observed, the only relief sought in this lawsuit is injunctive relief.  Finally, each *pro se* plaintiff seeks an award of attorney fees in the amount of $5,000.00. *Id*. at PageID.103.  Plaintiffs' requests for attorney fees are meritless.  While 42 U.S.C. § 1988 allows an award of attorney fees to prevailing parties in cases brought under § 1983 and RLUIPA, *pro se* plaintiffs cannot receive such fees. *See Wright v. Crowell*, 674 F.2d 521, 522 (6th Cir. 1982) (*pro se* litigant is not entitled to an award of attorney fees under 42 U.S.C. § 1988).

## II.    *Pro se* plaintiff Henry Smith cannot represent other *pro se* plaintiffs

As demonstrated by the response to the motion for summary judgment (ECF No. 33) and the "Objection/Rebuttal to Defendants Reply to Plaintiffs Response to Motion for Summary Judgment on the Basis of Exhaustion" (ECF No. 36), none of which were signed by the other *pro se* plaintiffs in this case, "lead plaintiff" Smith believes that he represents the other *pro se* plaintiffs in this case.[1]  As an initial matter, plaintiff Smith's "objection/rebuttal" is in actuality an improperly filed sur-reply brief, which this Court neither required nor permitted.  *See* W.D.

---

[1] While the Court granted plaintiff Smith's motion for extension of time to file a response (Order (ECF No. 32)), it appeared from that motion that Smith intended to file a response as to his claim only.

Mich. LCivR 7.2(c). Nevertheless, the Court will review the objection/rebuttal because it sets forth plaintiff Smith's theory that he is authorized to represent the other plaintiffs in this action.

Plaintiff Smith takes the position that the other *pro se* plaintiffs appointed him to represent them in this lawsuit and agreed that Smith as "the lead plaintiff . . . was to draft and sign all documents on behalf of all plaintiffs." *Id.* at PageID.247. In support of this position, plaintiff Smith presented a paper which he entitled "Affidavit concerning the Right/Duty to sign legal documents on behalf of "NGE" members involved with the 1:17-cv-00285 controversy" (ECF No. 36, PageID.248). Despite its caption, this paper is neither an affidavit nor an unsworn declaration as allowed under 28 U.S.C. § 1746.[2] Furthermore, this paper is not signed by the other *pro se* plaintiffs who purportedly appointed plaintiff as their representative; rather, it is a self-serving statement in which plaintiff Smith claims to be authorized to litigate this matter on behalf of the other *pro se* plaintiffs, stating in pertinent part:

> 1) Nation of Gods and Earths members that are plaintiffs in case no. 1:17-cv-00285 knew in advance that the defendants would divide them in an attempt to impede the judicial process.
>
> 2) In light of this revelation, plaintiffs imparted Smith #482999 AKA Bad Eye Allah with the Right/Duty to sign **ALL** papers on behalf of **ALL** plaintiffs[.]
>
> 3) If asked all plaintiffs will confirm the facts stated herein.

---

[2] While the paper is signed by a notary, it did not contain a notary jurat vouching for the truthfulness of the signed record. *See* M.C.L. § 55.265(a). "The absence of a jurat or other evidence of verification requires a finding that the document fails to constitute an affidavit." *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). "A purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all." *Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930). In addition, the "declaration" does not comply with the requirements of 28 U.S.C. § 1746(2), which provides that in any matter which "is required or permitted to be supported, evidenced, established, or proved by the sworn declaration . . . or affidavit, in writing of the person making the same . . . may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration . . . or statement, in writing of such person which is subscribed by him, as true under penalty of perjury." Such statements must be made in substantially the following form, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)". 28 U.S.C. § 1746(2). Here, Smith does not declare that the statements are "true and correct" as required by the statute; rather, he sets forth a qualification on the "truthfulness" of his statement, i.e., "[u]nder the penalty of perjury I Henry Lee Smith AKA Bad Eye Allah swears that the aforementioned is true and factual *to the best of my ability*" (emphasis added).

Smith Aff. (ECF No. 36, PageID.348) (emphasis in original).

However, even if plaintiff Smith had presented a paper signed by the other *pro se* plaintiffs appointing him as their representative in this lawsuit, it would be meaningless.  Despite what Smith and the other plaintiffs may believe, Smith cannot file motions, briefs, pleadings, or any other paper on behalf of, or for the benefit of, the other *pro se* plaintiffs.  Smith does not purport to be an attorney.  Rather, Smith claims that as the "lead plaintiff" in this lawsuit, he can represent the other plaintiffs.  Contrary to Smith's claim, there is no "lead plaintiff" in this lawsuit.  Smith can only represent himself pursuant to 28 U.S.C. § 1654, which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."  Under this statute, "[a] nonlawyer can't handle a case on behalf of anyone except himself."  *Georgakis v. Illinois State University*, 722 F.3d 1075, 1077 (7th Cir. 2013).  *See Zanecki v. Health Alliance Plan of Detroit*, 576 Fed. Appx. 594, 595 (6th Cir. 2014) (because "*pro se*" means to appear on one's own behalf, a person may not appear *pro se* on another person's behalf in the other's cause of action); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (28 U.S.C. § 1654 "does not permit plaintiffs to appear *pro se* where interests other than their own are at stake"); *Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) (stating that "[t]he federal courts have consistently rejected attempts at third-party lay representation" and that "[b]y law [28 U.S.C. § 1654] an individual may appear in federal courts only pro se or through legal counsel").

Fed. R. Civ. P. 11(a) also speaks to this issue, providing that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name -- or by a party personally if the party is unrepresented."  Fed. R. Civ. P. 11(a).  In those instances in which an attorney or a party fails to sign a paper, Fed. R. Civ. P. 11(a) provides that,

"[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention." *Id*. Here, however, the "prompt correction" provision of Rule 11(a) does not apply to the papers filed by Smith. This is not a case where a *pro se* plaintiff forgot to sign a motion or brief. Rather, *pro se* plaintiff Smith intended to sign the papers on behalf of all of the *pro se* plaintiffs, claiming that he was authorized to do so in clear violation of Fed. R. Civ. P. 11(a).

As the Court explained in *Gonzales v. Wyatt*, 157 F.3d 1016 (5th Cir. 1998),

> "The purpose of requiring [in Rule 11a] unrepresented parties to sign their pleadings . . . . was to make certain that those named as parties in an action in which there was no lawyer actually had assented to the filing of the action on their behalf." 5A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1334 at 54-55 (footnote omitted); *Scarrella v. Midwest Federal Savings and Loan*, 536 F.2d 1207, 1209 (8th Cir. 1976); *Covington v. Cole*, 528 F.2d 1365, 1370 n. 7 (5th Cir. 1976); *Huffman v. Nebraska Bureau of Vital Statistics*, 320 F. Supp. 154, 156 (D. Neb. 1970). When the unsigned pleading or other paper is tendered to the clerk for filing by the *pro se* party himself, that purpose of Rule 11a may be sufficiently fulfilled to allow relation back if the party with reasonable promptness thereafter signs and refiles the document. *See Adams* [*v. Perloff*, 784 F. Supp. 1195 (E.D. Pa. 1992)]. **But, where the document is tendered and signed by a nonlawyer on behalf of another, then there comes into play the underlying principle itself, namely that in federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer.**

*Gonzales*, 157 F.3d at 1021 (emphasis added). Similarly, in the context of *pro se* appellants, the Sixth Circuit found that each appellant needed to sign the notice of appeal, observing that "where there are multiple *pro se* appellants, the possibilities for confusion and opportunistic behavior are multiplied." *Mattingly v. Farmers State Bank*, 153 F.3d 336, 337 (6th Cir. 1998).

Here, defendants filed a motion for summary judgment. W.D. Mich. LCivR 7.2(c) requires that "[a]ny party opposing a dispositive motion shall, within twenty-eight (28) days after service of the motion, file a responsive brief and any supporting materials." Plaintiff Smith is the only plaintiff who filed a response opposing defendants' motion, which he intended to be filed on

behalf of all plaintiffs.  In his objection/rebuttal, plaintiff Smith attempts to justify his actions by claiming that the MDOC "strategically separated" plaintiffs "to hinder the legal process," and that "it is impossible for all plaintiffs to sign the documents."  Objection at PageID.246. While Smith complains that plaintiffs have been separated, prisoners in the custody of the MDOC have no constitutional right to remain together in the same prison.  *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) ("[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir. 1986) ("[a] prisoner has no inherent constitutional right to be housed in a particular institution").

Smith's objection/rebuttal provides an example of why lawsuits brought by multiple *pro se* plaintiffs are oftentimes impractical.  The "impracticalities inherent in multiple-prisoner litigation" include difficulties such as:

> the need for each plaintiff to sign every pleading; the transitory nature of prison populations; the possibility that documents may be changed by one of the plaintiffs; that prisoners may attempt to compel authorities to allow them to gather to discuss their lawsuit; the possibility of coercion in relationships between inmates; and the need to resolve individualized administrative exhaustion issues.

*Odom v. Hiland*, No. 5:12-CV-P124-R, 2012 WL 6203966 at *1 (W.D. Ky. Dec. 12, 2012) (citing *Boretsky v. Corzine*, No. 08-2265(GEB), 2008 WL 2512916 (D.N.J. June 23, 2008).

Plaintiff Smith has created confusion in the litigation of this lawsuit by submitting documents signed by him as the "lead plaintiff" and exhibited opportunistic behavior as he claims to be the mouthpiece for the other *pro se* plaintiffs.  Because plaintiff Smith cannot speak for anyone but himself, it appears to the Court that plaintiffs Turner, Flakes, Sardin and Madlock have not responded to the motion for summary judgment.  For that reason, the motion is unopposed as to them. In this regard, the Court has issued a notice to all plaintiffs advising them of the

requirements set forth in 28 U.S.C. § 1654 and Fed. R. Civ. P. 11(a) and the consequences for failing to comply with those requirements.

### III.     Defendants' motion for summary judgment

### A.     Legal standard

Defendants have moved for summary judgment on the claims of all plaintiff for lack of exhaustion.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, the motion has not been opposed by plaintiffs Turner, Flakes, Sardin and Madlock.  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).  However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact.  *Id.* at 405.

### B.    Failure to Exhaust

### 1.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), states that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Thus, a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

3.      **Discussion**

As discussed, the incident at issue occurred on March 24, 2017, plaintiffs prepared their complaint on that same date, signed it March 27, 2017, and filed this lawsuit on March 30, 2017.  Compl. (ECF No. 1).  Plaintiff Smith filed an amended complaint on July 31, 2017 (ECF No. 20), which the other plaintiffs (Turner, Flakes, Sardin and Madlock) did not sign until they filed a signature page on September 13, 2017 (ECF No. 22).  Defendants point out that none of the plaintiffs exhausted a grievance before filing the complaint on March 30, 2017:

> Here, a review of Plaintiffs' Step III grievance reports indicate that, prior to filing this lawsuit on March 30, 2017, none of them had exhausted any grievances through Step III of the grievance process. (Exs. 2-6.) Smith and Flakes filed grievances on March 29, 2017, Sardin filed a grievance on March 30, 2017, and neither Turner nor Madlock filed any grievances. (Exs. 2-6.) The grievances filed by Smith, Flakes, and Sardin were not completed through Step III when they filed the instant complaint on March 30, 2017. Defendants should therefore be dismissed from this lawsuit.

Defendants' Brief (ECF No. 29, PageID.169-170).  In his response to the motion for summary judgment, *pro se* "lead plaintiff" Smith admits the obvious, i.e., "that Plaintiffs' failed to exhaust all remedies at the initial time of filing the initial Complaint on March 30, 2017."  Smith Response (ECF No. 33, PageID.232).

Plaintiff Smith apparently contends that because the amended complaint takes the place of the original complaint, plaintiffs only needed to exhaust the claim in the amended complaint before they filed it.   The question before the Court is whether plaintiffs could exhaust their administrative remedies after they filed the original complaint in March 2017, but before they filed the amended complaint, which was not signed by all plaintiffs until September 13, 2017.  The answer is no.  "The plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). For this reason,

11

a prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Id*. A limited exception to this rule exists when a plaintiff files a complaint with properly exhausted claims and then seeks to amend the complaint to add new claims which the plaintiff exhausted after filing the lawsuit.  *See Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017) ("the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint to add claims that were exhausted after the commencement of the lawsuit, *provided that the plaintiff's original complaint contained at least one fully exhausted claim*" (emphasis added)).  Here, plaintiffs' original complaint did not contain "at least one fully exhausted claim."  Plaintiffs cannot circumvent the exhaustion requirement by filing a complaint with unexhausted claims, waiting several months, and then filing an amended complaint stating that their claims are exhausted.

In summary, plaintiffs did not properly exhaust their claims against defendants Washington and Farber.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. Accordingly, defendants' motion for summary judgment should be granted.

### IV.    Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 28) be **GRANTED** and that this action be **TERMINATED**.

Dated:  December 4, 2018                    /s/ Ray Kent
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).